Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF DEREK VALENTINE,
ARACELI SANCHEZ, L.V., C.V., M.V.,
RUTH RAMIREZ, and ALBERT VALENTINE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ESTATE OF DEREK VALENTINE, ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

31-year-old DEREK VALENTINE died by overdose on April 20, 2023, while in the custody of the COUNTY OF MERCED at the John Latorraca Correctional Center, under the supervision of MERCED COUNTY SHERIFF'S OFFICE custody staff and CALIFORNIA FORENSIC MEDICAL GROUP (also known as or doing business as WELLPATH) contracted medical staff. Sheriff VERNON WARNKE and his jail staff failed to prevent inmates' access to dangerous drugs, failed timely to detect DEREK VALENTINE's medical needs when he ingested dangerous drugs, and failed adequately to render necessary medical care when DEREK VALENTINE's immediate medical need was discovered.

1

**JURISDICTION & VENUE**

1.     This Court has jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

2.     Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.     Intradistrict venue is proper in the Fresno Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Merced, California.

**EXHAUSTION**

4.     On May 24, 2023, the ESTATE OF DEREK VALENTINE, ARACELI SANCHEZ, L.V., C.V., and M.V. submitted a substantially compliant government claim to the COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE relating to the claims asserted in this action. (Claim No. 2023-209.)

5.     On July 14, 2023, the COUNTY OF MERCED submitted a "Notice of Action on Claim" providing that the claim was "Rejected by Board of Supervisors Action on 7/14/2023."

6.     By July 14, 2023, the MERCED COUNTY SHERIFF'S OFFICE failed or refused to act on the claim within 45 days after the claim was presented, pursuant to California Government Code § 912.4.

**PARTIES**

7.     Plaintiff ESTATE OF DEREK VALENTINE appears by and through the real-party-in-interest Plaintiff ARACELI SANCHEZ, the legal spouse of DEREK VALENTINE, who brings this action pursuant to California Code of Civil Procedure § 377.30. Plaintiff ARACELI SANCHEZ brings this action as the successor-in-interest on behalf of the decedent DEREK VALENTINE. A declaration regarding Plaintiff ARACELI SANCHEZ's status as DEREK VALENTINE's successor-in-interest is attached, pursuant to California Code of Civil Procedure § 377.32.

2

8.      Plaintiff ARACELI SANCHEZ is a resident of the State of California, County of Merced. Plaintiff ARACELI SANCHEZ brings this action: (a) on behalf of DEREK VALENTINE, in her representative capacity as the successor-in-interest; and (b) on behalf of herself, in her individual capacity. Plaintiff ARACELI SANCHEZ is the legal spouse of DEREK VALENTINE and the heir to his estate under California law.

9.      Plaintiff L.V. is a resident of the State of California, County of Merced. Plaintiff L.V. brings this action on behalf of herself, in her individual capacity. Plaintiff L.V. is the biological daughter of DEREK VALENTINE.

10.      Plaintiff C.V. is a resident of the State of California, County of Merced. Plaintiff C.V. brings this action on behalf of himself, in his individual capacity. Plaintiff C.V. is the biological son of DEREK VALENTINE.

11.      Plaintiff M.V. is a resident of the State of California, County of Merced. Plaintiff M.V. brings this action on behalf of himself, in his individual capacity. Plaintiff M.V. is the biological son of DEREK VALENTINE.

12.      Plaintiff RUTH RAMIREZ is a resident of the State of California, County of Merced. Plaintiff RUTH RAMIREZ brings this action on behalf of herself, in her individual capacity. Plaintiff RUTH RAMIREZ is the biological mother of DEREK VALENTINE.

13.      Plaintiff ALBERT VALENTINE is a resident of the State of Texas, County of Montgomery. Plaintiff ALBERT VALENTINE brings this action on behalf of himself, in his individual capacity. Plaintiff ALBERT VALENTINE is the biological father of DEREK VALENTINE.

14.      Defendant COUNTY OF MERCED is located in the State of California. Defendant COUNTY OF MERCED is a "public entity," pursuant to California Government Code § 811.2.

15.      Defendant MERCED COUNTY SHERIFF'S OFFICE located in the State of California, County of Merced. Defendant MERCED COUNTY SHERIFF'S OFFICE is a "public entity," pursuant to California Government Code § 811.2.

16.      Defendant VERNON WARNKE is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, acting within the scope of employment and under color of state law. Defendant

3

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Valentine v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

VERNON WARNKE is sued in an individual capacity.

17.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, also-known-as CORRECTIONAL MEDICAL GROUP COMPANIES and/or doing-business-as WELLPATH is a California corporation licensed to and doing business in the State of California, as a contracted provider of medical services to jail facilities operated by Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

18.     Defendants DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and/or CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

19.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### Derek Valentine

20.     DEREK VALENTINE was a 31-year-old man, prior to his death on April 20, 2023.

21.     DEREK VALENTINE cohabitated and shared a close relationship and special bond with his wife, Plaintiff ARACELI SANCHEZ, and their three minor children, Plaintiffs L.V., C.V., and M.V., prior to his death.

22.     DEREK VALENTINE shared a close relationship and special bond with his mother, Plaintiff RUTH RAMIREZ, and father, Plaintiff ALBERT VALENTINE, prior to his death.

23.     DEREK VALENTINE suffered from diagnosed mental disabilities, including substance use disorder and major depressive disorder. DEREK VALENTINE's disabilities required hospitalization and treatment on occasions prior to his death, and substantially limited one or more major life activities, including his ability to care for himself, concentrate, think, and communicate.

24.     DEREK VALENTINE was prescribed medications for mental disabilities, including for several years prior to death.

25.     DEREK VALENTINE's mental disabilities and associated symptoms were exacerbated

4

when he became stressed, discontinued taking medications, and/or abused substances.

**County of Merced**

26.     Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE operate and manage jail facilities within the County of Merced, including the John Latorraca Correctional Center.

27.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE are responsible for the actions and/or inactions and the policies and customs of their employees and agents, including responsibilities for ensuring the provision of emergency and basic medical and mental health care services to all inmates in their custody and care.

28.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE have authority to make contracts, to provide for jails and corrections, and to operate and/or be responsible for county health facilities, including jails, through contracts, joint ventures, or partnerships.

29.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE contract with Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH to provide medical care to inmates in jail facilities, including the John Latorraca Correctional Center.

30.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP (now known as Wellpath and H.I.G. Capital, through its executives, officers, leadership, employees, agents and representatives), provides a governmental function and stands in the same capacity as Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE in carrying out duties at jail facilities, including the John Latorraca Correctional Center.

31.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE, jointly with Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, were and are responsible to develop joint policies and procedures affecting inmates requiring medical care and treatment in custody and to provide continuity of care from the time detainees are booked until they are released.

32.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

5

1    VERNON WARNKE are responsible for overseeing that Defendant CALIFORNIA FORENSIC

2    MEDICAL GROUP dba WELLPATH's staff complies with their contractual responsibilities to provide

3    inmate medical care.

4           33.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH were

5    directly responsible for staffing, training, supervision, and certain policies and customs at Defendants

6    COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's jail

7    facilities. Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH provided

8    licensed, qualified physicians and nurses on a contract basis at Defendants COUNTY OF MERCED,

9    MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's jail facilities, and employed or

10   was responsible for medical staff at the jail, including Defendants DOE 1 to 20.

11                 **H.I.G. Capital / California Forensic Medical Group / Wellpath**

12          34.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP is also-known-as

13   CORRECTIONAL MEDICAL GROUP COMPANIES INC. since 2013. Defendant H.I.G. CAPITAL,

14   LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL GROUP, rebranding its name under the

15   umbrella of Correctional Medical Group Companies in 2013.

16          35.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP is also-known-as

17   WELLPATH since October 1, 2018. October 1, 2018, Defendant H.I.G. CAPITAL, LLC announced

18   acquisition and joining of forces of Correctional Medical Group Companies with Correct Care Solutions,

19   creating a partnership with management, and rebranding as WELLPATH.

20          36.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH was and is

21   owned and controlled by H.I.G. CAPITAL, LLC.

22          37.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH acts on

23   behalf of H.I.G. CAPITAL, LLC and was and is responsible for the hiring, retaining, training, and

24   supervising of the conduct, policies and practices of its employees and agents.

25          38.    H.I.G. CAPITAL, LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL

26   GROUP in 2013 and rebranded its name to Correctional Medical Group Companies. H.I.G. CAPITAL,

27   LLC is the owner, manager, and partner of Defendant CALIFORNIA FORENSIC MEDICAL GROUP

28   dba WELLPATH.

39.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's executives, directors, supervisors and managers, physicians, nurses, licensed vocational nurses, health providers act on behalf of H.I.G. CAPITAL, LLC.

40.     H.I.G. CAPITAL, LLC is the alter ego of Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or vice versa.

41.     H.I.G. CAPITAL, LLC places its in-house professional and expertise as board members of CFMG to ensure their control over Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, resulting in a unity of interest and ownership lack of separate personalities between H.I.G. CAPITAL, LLC and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and their employees and agents.

42.     H.I.G. CAPITAL, LLC places at least two managing directors and one principal of its private equity team as board members, chief financial officers, or other executive officers for Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, ensuring continuity of financial and practical control and management.

43.     H.I.G. CAPITAL, LLC uses Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH as a shell, instrumentality, or conduit for financially profiting from providing mental/medical care to inmates/prisoners.

**In-Custody Death**

44.     On February 7, 2023, DEREK VALENTINE was transferred from the custody of the California Department of Corrections and Rehabilitation into the custody of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE at the John Latorraca Correctional Center, 2584 Sandy Mush Road, Merced, CA 95341.

45.     DEREK VALENTINE's jail records documented several "problems" upon intake, including "Moderate persistent asthma," "Nicotine dependence," "Other stimulant abuse" including "Methamphetamine," "Opioid abuse," "Essential (primary) hypertension," and "Major depressive disorder, recurrent." "Social Hx: tobacco 1 Pack/week since age 18. Drugs: Meth (smoke) 1 gm since age 19-last used 1 yr, Cocaine: 1 gm/week since age 19-last used 3 yrs ago, Heroin 1 gm/week since age 29-last used 1 yr ago. ETOH: beer 3 pack/daily since age 17-last drank prior to incarceration."

7

46.     From February 7, 2023, to February 12, 2023, medical staff ordered and implemented increased monitoring and testing of DEREK VALENTINE using the Clinical Opiate Withdrawal Scale ("COWS").

47.     On February 12, 2023, medical staff discontinued increased monitoring and testing of DEREK VALENTINE using the COWS.

48.     On February 12, 2023, DEREK VALENTINE's jail records documented: "HX of Poly substance dep, Marijuana, heroin and Meth, Alcohol abuse."

49.     On March 20, 2023, DEREK VALENTINE was evaluated during a "sick call," where he informed medical staff that he had been injured. DEREK VALENTINE's jail records document: "Patient states that he hurt his back while working in the kitchen on Sunday afternoon. Patient denies any fall, states that pain is 8/10 lower back." Medical staff prescribed DEREK VALENTINE "Ibuprofen 400mg BID PRN x 5 days."

50.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's jail facilities are overrun with drugs which are readily available to inmates, including fentanyl. In particular, drugs are available to inmates on the yard at the John Latorraca Correctional Center.

51.     Approximately one week prior to April 20, 2023, an inmate at the jail overdosed on fentanyl.

52.     On April 20, 2023, DEREK VALENTINE became severely ill and suffered a medical emergency inside of his cell, including vomiting and losing consciousness.

53.     DEREK VALENTINE had a physical and mental impairment that substantially limited one or more major life activities, including the inability to care for himself and a loss of consciousness.

54.     On information and belief, DEREK VALENTINE ingested fentanyl.

55.     Defendants MERCED COUNTY SHERIFF'S OFFICE and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's jail staff, including Defendants DOE 1 to 20, failed adequately to monitor, detect, and respond to DEREK VALENTINE's access to fentanyl and medical emergency after ingesting fentanyl, despite the ability and duty to do so. For example, Defendants DOE 1 to 20 knew or should have known that DEREK VALENTINE was at risk of harm based on inadequate

supervision and monitoring of inmates in and around the jail facilities and areas in which DEREK VALENTINE was located.

56.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed adequately to staff jail facilities with adequate personnel and to monitor inmates at jail facilities, including DEREK VALENTINE, in violation of California Code of Regulations tit. 15 § 1027 *et seq.*

57.     An inmate discovered that DEREK VALENTINE was non-responsive.

58.     The inmate alerted jail staff to DEREK VALENTINE's immediate medical need.

59.     At approximately 9:50 p.m., Defendant DOE 1, a jail staff member, radioed "man down."

60.     At approximately 10:00 p.m., medical staff detected that DEREK VALENTINE had "[n]o pulse or breaths" and his hands were "purple" in color.

61.     Jail staff members attempted to revive DEREK VALENTINE, including through the use of Narcan injectors.

62.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to maintain an adequate supply of Narcan to treat DEREK VALENTINE, including in the appropriate size and amount. On information and belief, Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's failure to maintain an adequate supply of Narcan is attributable to the significant number of prior overdoses at jail facilities.

63.     At approximately 10:26 p.m., DEREK VALENTINE was pronounced dead at the scene.

64.     At 11:08 p.m., Defendant DOE 2, a medical staff member, documented that DEREK VALENTINE received several medications, including "Paroxetine (Paxil) 40mg 1 Tab," "Prazosin (Minipress) 1 mg 1 cap," "Alvesco 60 inhalations 160mcg 6.1gm," "Hydroxyzine Hcl (Atarax) 50mg 1 tab," "Albuterol HFA (Proair) 6.7gm," "Melatonin 3mg 1 tab," And "Lisinopril (Zestril) 20mg 1 tab."

65.     On May 22, 2023, Defendant MERCED COUNTY SHERIFF'S OFFICE's Coroner Division reported that DEREK VALENTINE's cause of death was "Acute combined fentanyl, paroxetine and hydroxyzine toxicity."

9

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Valentine v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

66.     Several inmates have overdosed at the John Latorraca Correctional Center, including both prior to and after DEREK VALENTINE's death, due to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's failure adequately to staff jail facilities with adequate personnel and to monitor inmates at jail facilities.

**Failure to Produce Medical Records**

67.     On May 31, 2023, Plaintiffs ESTATE OF DEREK VALENTINE and ARACELI SANCHEZ, through their legal representative, presented a written authorization to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH requesting prompt production of DEREK VALENTINE's records, pursuant to California Evidence Code § 1158.

68.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to comply with California Evidence Code § 1158(d)'s requirement that DEREK VALENTINE's records be produced "within five days after the presentation of the written authorization…"

69.     On June 22, 2023, Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH produced some of DEREK VALENTINE's records but withheld other records, including, for example, DEREK VALENTINE's coroner report and mortality & morbidity report.

70.     On September 5, 2023, Defendant COUNTY OF MERCED produced DEREK VALENTINE's coroner report but withheld other records.

71.     On information and belief, Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's failure to produce DEREK VALENTINE's records as required by law is an effort to delay, obscure, and suppress the discovery of misconduct and malfeasance related to his death.

**POLICY AND CUSTOM ALLEGATIONS**

72.     Defendant VERNON WARNKE, in his capacity as Sheriff, is and was a final policymaking authority for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities; training,

10

supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Defendant VERNON WARNKE has been employed by Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE since 1979, including in supervisory and policymaking capacities since at least 1997. Defendant VERNON WARNKE has served as Sheriff since December 2014.

73.     Defendant VERNON WARNKE, as sheriff, was a final policymaking authority for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities, such as the John Latorraca Correctional Center; the hiring, screening, training, supervision, counseling, discipline, and control of law enforcement officers acting under his command; the safekeeping of inmates/prisoners in his custody; the prompt transfer of mentally or medically ill inmates to appropriate out-of-facility placements; and the promulgation of the policies and procedures and allowance of the practices and customs. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610.

74.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH were charged by law with the administration of jail facilities within the County of Merced, including the John Latorraca Correctional Center, and the delivery of medical services during DEREK VALENTINE's incarceration.

75.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE failed adequately to monitor the administration of the requirements and the obligations imposed by Defendant COUNTY OF MERCED's contract with Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, including staffing and delivery of medical services at jail facilities.

76.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH had a duty to provide DEREK VALENTINE with adequate medical services but failed to do so.

11

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Valentine v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

77.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's policies and customs fail to comply with the standards set forth by the National Commission on Correctional Health Care ("NCCHC"), including standards related to housing, medical care, and treatment.

78.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained a policy or custom of inadequate supervision, reporting, and medical care and treatment, in violation of constitutional rights of persons held in their jail facilities, including DEREK VALENTINE. Specifically, the inadequate polices, customs, training, supervision, and discipline of jail staff at the John Latorraca Correctional Center resulted in the following deficiencies:

(a)     Failure to identify and to provide appropriate medical care for inmates;

(b)     Failure to train, supervise, and/or promulgate appropriate policies and procedures in order to identify and to provide appropriate medical care for inmates;

(c)     Failure to provide access to appropriate medical care and treatment, continuity of care, and access to a higher level of care not available at jail facilities;

(d)     Failure to maintain sufficient, competent, required, and contracted staffing, including in compliance with California Code of Regulations tit. 15 § 1027;

(e)     Failure to utilize appropriate nationally- and locally-accepted minimum standards, procedures, and practices to identify and to provide appropriate medical care for inmates;

(f)     Failure to comply with, enforce, and implement self-imposed policies and procedures to identify and to provide appropriate medical care for inmates;

(g)     Failure to maintain competent and adequate supervision and training of medical and custodial staff related to appropriate medical care for inmates;

(h)     Failure to place inmates' safety and needs, including duties and responsibilities to provide sufficient and competent medical care staff to inmates, above financial interests and profits;

(i)     Failure to conduct appropriate and complete safety checks for inmates, including in compliance with California Code of Regulations tit. 15 § 1027.5;

(j)     Failure to create and implement appropriate medical treatment plans;

12

(k)     Failure to maintain an adequate supply of medicine to treat inmates, including Narcan; and/or

(l)     Failure to acknowledge inmate grievances and misconduct, including failure to conduct timely or adequate investigations of inmate grievances, pro forma denials of inmate grievances, and failure to respond to, or to take adequate actions to respond to or rectify problems identified in, inmate grievances.

79.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained a policy or custom of inadequate supervision and monitoring of inmates, resulting in violation of constitutional rights of persons held in their jail facilities, including DEREK VALENTINE. For example:

(a)     On November 28, 2023, Defendant VERNON WARNKE informed Defendant COUNTY OF MERCED's Board of Supervisors that Defendant MERCED COUNTY SHERIFF'S OFFICE's jail facilities are habitually understaffed, stating: "We're down 30 positions in corrections, with more putting in for other agencies. . . . Correctional officers: 30 CO vacancies down. We're 28% in staffing, out of 108 positions. . . . With our jail construction, we have closed two dormitories due to lack of staff, which is assisting in the re-model. It's just nature of the beast, we have to do it. Due to lack of staffing, correctional officers are working three 16-hour shifts a week. It's mandatory, they don't have a choice. No other agency in this county has to do that, or will do that. . . . The state of the Sheriff's Office is dire." *See* <https://www.facebook.com/MercedSheriffOffice/videos/884305920066178/?extid=CL-UNK-UNK-UNK-IOS_GK0T-GK1C&mibextid=cr9u03>; *see also* <https://www.countyofmerced.com/3919/Board-Archive-2023>.

(b)     On August 30, 2023, Defendant VERNON WARNKE and undersheriff Corey Gibson acknowledged that Defendant COUNTY OF MERCED's actions and inactions ensure that Defendant MERCED COUNTY SHERIFF'S OFFICE's jail facilities are habitually understaffed, stating: "As you know, sheriff, we've had some struggles currently with our staffing, both in corrections and operations. Currently, we have 108 allotted positions through the county for custodial staff. And out of those 108, we currently have 33 vacancies. Even to make it worse, out of those, for people currently

1  employed, we have 10 that are still in training and aren't able to work line as a solo officer. So, we're

2  still working through those struggles. . . . I'm very proud of the personnel that we do have, busting their

3  butts. Especially our correctional staff is doing 16-hour days, three and four days a week." *See*

4  <https://youtu.be/1DAqNHFOKoE?si=KMwLWr6MqMxseq1k>.

5          (c)      On May 25, 2023, 28-year-old Tomi Kartchner was housed in the John Latorraca

6  Correctional Center and was permitted to hang herself in her jail cell. On May 19, 2023, jail staff placed

7  Tomi Kartchner on suicide watch for express suicidal ideation and history. Less than one day later, Tomi

8  Kartchner was removed from suicide watch and placed in a cell with the ability and lack of supervision

9  necessary to self-harm. Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff failed to

10  monitor, detect, and prevent Tomi Kartchner's attempted suicide.

11          (d)      On October 19, 2022, 21-year-old Jacob Apodaca was housed in the Merced

12  County Main Jail with at least six other inmates, including Encarncion Salinas and Mario Smith Jr. Jacob

13  Apodaca was attacked and murdered by Encarncion Salinas and Mario Smith Jr. inside of the cell, over

14  the course of approximately 10 minutes, where Jacob Apodaca sustained more than 150 stab wounds and

15  was repeatedly stomped. The entire attack was video-recorded on Defendant MERCED COUNTY

16  SHERIFF'S OFFICE's surveillance system but none of its jail staff was monitoring the video feed or

17  detected the attack while it was in progress. Defendant MERCED COUNTY SHERIFF'S OFFICE's jail

18  staff, including sergeant Soto and deputy John Wibright, abandoned their posts and responsibilities to

19  monitor and supervise inmates, including during Encarncion Salinas and Mario Smith Jr.'s attack on

20  Jacob Apodaca, to attend a jail-sanctioned briefing for jail personnel. Proceedings in Jacob Apodaca's

21  murder trial revealed that Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff routinely

22  abandoned their posts and supervision of inmates for up to two hours-per-day, including in violation of

23  California Code of Regulations tit. 15 § 1027.5. 46 minutes after the attack ended, Jacob Apodaca's body

24  was discovered in the corner of the cell during a routine cell-check by jail staff. Defendant MERCED

25  COUNTY SHERIFF'S OFFICE conducted an in-custody death investigation/review following Jacob's

26  death. (IA 2022-016.) On February 7, 2023, Defendant MERCED COUNTY SHERIFF'S OFFICE

27  captain Jeff Coburn concluded the investigation: "In review of the documentation and video evidence, I

28  was unable to identify any policy or procedure violations by Correctional staff." Defendant VERNON

WARNKE ratified the findings and conclusion of the investigation. A civil rights lawsuit was filed by Jacob Apodaca's family against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE. *Estate of Apodaca v. County of Merced*, United States District Court, Eastern District of California, Case No. 1:23-cv-00171-JLT-SAB. The case was settled pre-trial for $2,950,000.

(e)     On January 9, 2021, six inmates escaped from the Merced County Main Jail but Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff failed to discover that the inmates had escaped until the following day, more than eight hours after the inmates escaped. Defendant MERCED COUNTY SHERIFF'S OFFICE's internal investigation found a "multitude of different correctional staff members" contributed to the inmates' escape, where "head counts, security checks, and daily tasks by Correctional Officers were not being completed." Instead, "while the escape was occurring correctional staff were present in the control room playing a game" and "correctional staff were frequently in the control room playing cards, playing 'corn hole', betting on the games, exchanging money, removing their uniforms, and watching movies on the computer," rather than carrying out their duties, including monitoring inmates. (IA 2021-001.) Defendants MERCED COUNTY SHERIFF'S OFFICE and VERNON WARNKE failed adequately to discipline or terminate any of the involved jail staff, as a result of the investigation.

(f)     On March 23, 2019, 39-year-old Rene Snider was housed in the Merced County Main Jail and was permitted to hang herself in her jail cell using a bed sheet tied around a bunk. Defendant MERCED COUNTY SHERIFF'S OFFICE correctional officer Adriana Castaneda failed to conduct a cell-check on jail inmates, including Rene Snider, for one hour, 22 minutes, and 33 seconds. Adriana Castaneda became "districted" and engaged in a non-substantive conversation with a fellow correctional officer for 46 minutes, during which time Rene Snider died. Defendant MERCED COUNTY SHERIFF'S OFFICE's internal investigation "sustained" violations of policy against Adriana Castaneda for failure timely to conduct cell-checks but the only "discipline" imposed was a "written reprimand" issued on September 23, 2019. (IA 2019-004.) A civil rights lawsuit was filed by Rene Snider's family against Defendants COUNTY OF MERCED and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH. *D.M. v. County of Merced*, United States District Court, Eastern District of California,

15

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Valentine v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

Case No. 1:20-cv-00409-JLT-SAB. The case remains pending.

(g)     On August 14, 2018, Defendant VERNON WARNKE informed Defendant COUNTY OF MERCED's Board of Supervisors that, despite inadequate staffing at Defendant MERCED COUNTY SHERIFF'S OFFICE's jail facilities: "We will make room at the inn for whoever needs it." <https://livestream.com/accounts/21193189/events/8017913/videos/178927918>; *see also* Jason Pohl & Ryan Gabrielson, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>.

(h)     On June 17, 2018, 20-year-old Fabian Cardoza was housed in the Merced County Main Jail when he was killed in the shower. Fabian Cardoza was cornered and attacked by two inmates, including Santiago Martinez. The attackers choked Fabian Cardoza to death, then carried his lifeless body back to his cell. 24 hours passed without the attack being detected. The following day, a jail guard went to Fabian Cardoza's cell for his court hearing and found his body. The entire attack was video-recorded on Defendant MERCED COUNTY SHERIFF'S OFFICE's surveillance system but none of its jail staff was monitoring the video feed or detected the attack while it was in progress or after it occurred. "More than a year later, the sheriff's office still has not acknowledged that the jail staff overlooked a corpse in a cell bed for more than a day. Merced County Sheriff Verne Warnke declined to answer reporters' questions for this story, but he has blamed low staffing levels for jail violence." Jason Pohl & Ryan Gabrielson, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>; *see also* <https://www.documentcloud.org/documents/5976132-Cardoza-18-29240.html#document/p14/a499625>.

(i)     On June 11, 2017, 31-year-old Aaron Bonilla was housed in the Merced County Main Jail with at least three other inmates, including Steven Rincon, Reyes Carrillo, and Alfonso Martinez. Aaron Bonilla was attacked and murdered by Steven Rincon, Reyes Carrillo, and Alfonso Martinez inside of the cell, over the course of approximately 12 minutes, where Aaron Bonilla was beaten to death. The attack was not detected by Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff and was discovered only when other inmates alerted jail staff. Jason Pohl & Ryan Gabrielson,

16

*Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>. Defendant VERNON WARNKE admitted that the jail was understaffed, stating: "Realistically we're 10 or 12 down in our corrections." <u>ABC30</u>, *Sheriff calling for better funding after Inmate dies after assault at Merced County Jail* (June 27, 2017), available at: <https://abc30.com/los-banos-inmate-merced-county-jail-dead/2156587/>. Prior to the attack, Defendant VERNON WARNKE also stated: "Our staffing levels are low, and don't think for a minute those inmates don't know it." Rob Parsons, *Central Valley Family of inmate beaten to death in Merced jail files $2 million lawsuit* (Mar. 14, 2018), available at: <http://www.mercedsunstar.com/news/local/central-valley/article205184219.html>. A civil rights lawsuit was filed by Aaron Bonilla's family against Defendants COUNTY OF MERCED and VERNON WARNKE. *Estate of Bonilla v. County of Merced*, United States District Court, Eastern District of California, Case No. 1:18-cv-00329-DAD-SKO. The case was settled pre-trial.

(j)     On September 19, 2015, 29-year-old Alejandro Vega was housed in the Merced County Main Jail when he was beaten to brain-death. Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff failed to detect the attack while it was in progress. Jason Pohl & Ryan Gabrielson, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>; *see also* <https://www.documentcloud.org/documents/6188401-Vega-autopsy-Merced.html>.

80.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE employ Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, a private for-profit company, to deliver constitutionally-mandated medical services to inmates, with knowledge that the services provided are inadequate and non-compliant with the contractually bargained-for services. For example:

(a)     "Wellpath provides health care in 34 of California's 56 county jail systems…" "In multiple instances, the for-profit company has secured multimillion-dollar county contracts without facing a single competitive bid…" "Wellpath hasn't lost a single contract to provide health care in a California county jail since its 2018 founding, even when serious allegations have surfaced." Wellpath is

subject to "more than 1,000 lawsuits in U.S. federal courts, filed by prisoners, their families and civil rights groups, naming the company as a defendant, and three recent investigations involving Wellpath's quality of care by the U.S. Department of Justice." There exist "four FBI investigations — three into the company's health care delivery and one into bribery allegations involving Gerard 'Jerry' Boyle, the founder of one of the two companies that merged to become Wellpath and who pleaded guilty to conspiracy to commit mail fraud." "In San Luis Obispo County, the Justice Department concluded that Wellpath did not provide a 'significant' improvement over a jail's former government-run system after the company's takeover in February 2019 — a system whose deficient care had prompted the investigation." "In a 2020 probe into the Massachusetts Department of Corrections, the DOJ found Wellpath's mental health care was so abysmal that it may have violated the U.S. Constitution's protections against 'cruel and unusual punishment,' with 'vague' policies that increased the risk of self-harm and suicide among mentally ill prisoners" and "[a] follow-up report [in 2023] revealed that Wellpath had low staffing levels and high rates of unlicensed mental health providers." "[Another] investigation focused on Correct Care Solutions, which became Wellpath in 2018 after merging with California Forensic Medical Group," where "[i]nvestigators found that the company failed to develop a quality-control plan and overbilled the state for its medical services in a Florida prison. The Federal Bureau of Prisons, which had awarded the contract to CCS, agreed with the DOJ's recommendations on how it could better monitor the company's performance." "A 2020 Reuters investigation of large jails found that patients at institutions using Wellpath and other private providers died at higher rates than at jails with public health care. The investigation found that from 2016 to 2018, for every 10,000 inmates in Wellpath's care, 16 died; in publicly run jails, that rate was 13 per 10,000." "[Wellpath] routinely fails to adequately staff California county jails with qualified nurses and doctors, meaning that sick patients often must wait weeks — or, in emergency situations, crucial minutes or hours — to be treated." "In Yuba County, attorneys appointed by the local Superior Court to monitor the jail's compliance with a decades-old settlement agreement alleging poor conditions found that Wellpath consistently failed to staff enough nurses and therapists to abide by the settlement's terms in both 2020 and 2021." "At the Sonoma County Jail, the National Union of Healthcare Workers, a group that represents many Wellpath nurses in California, sent a report to the Sonoma County Board of Supervisors finding that from December 2021

through March 2022, the jail staffed less than two-thirds of the nurse-hours that were required by their contract. The staffing levels in the jail were so low last March, the union's report found, that for every 500 prisoners in the Sonoma system, just one registered nurse was on duty at any given time." "Three of the five [former Wellpath employees questioned] said they were often responsible for a number of patients that felt unsafe or impossible to manage," including one former nurse stating: "I don't feel safe with 600 patients. That's not an OK ratio. Nowhere in the world is that an OK ratio." Susie Neilson, *Its patients are 'literally a captive market.' Is this California health care giant failing them?* (July 25, 2023), available at: <https://www.sfchronicle.com/california/article/wellpath-health-care-jails-17917489.php>.

(b)     Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH "has been sued nearly 500 times over the last five years across the country, according to an online review of lawsuits." Brooks Jarosz , Lisa Fernandez & Simone Aponte, *Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care* (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>.

(c)     In August 2021, the Civil Rights Division and the United States Attorney's Office for the Central District of California completed an investigation into the conditions of confinement at the San Luis Obispo County Jail, where medical and mental health services were operated by Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH since February 2019. Therein, the investigative report concluded, *inter alia*: "Wellpath and its staff appear not to take seriously prisoner grievances or the grievance process as a mechanism for prisoners to raise legitimate medical concerns"; "Wellpath fails to provide adequate staffing to prevent delays in medical care that place prisoners at substantial risk of serious harm"; "[t]he Jail provided no evidence that Wellpath has corrected these deficiencies" related to failure to "conduct critical incident reviews, and when prisoners died, death reviews … includ[ing] a meaningful analysis into causal factors or systemic issues"; "Wellpath does not routinely analyze the quality of care that it provides"; and "Wellpath in fact seems to discourage routine follow-up mental health care." <https://www.justice.gov/opa/press-release/file/1429076/download?utm_medium=email&utm_source=govdelivery>.

1        (d)     On June 24, 2017, 29-year-old Luis Patino was housed at the Merced County Main

2  Jail, where he remained until his death on September 27, 2017. Defendant CALIFORNIA FORENSIC

3  MEDICAL GROUP dba WELLPATH was responsible for Luis Patino's medical care. Luis Patino

4  developed valley fever (coccidioidomycosis), a fungal infection caused by coccidioides which was easily

5  diagnosed and treated. In the weeks before his death, Luis Patino complained that he was having chest

6  pain and difficulty breathing. Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba

7  WELLPATH's medical staff failed to diagnose or treat Luis Patino's illness but, instead, prescribed

8  inappropriate and inadequate pain and cold medications. On September 27, 2017, Luis Patino died of

9  disseminated coccidioidomycosis, the most serious form of valley fever. A civil rights lawsuit was filed

10  by Luis Patino's family against Defendants COUNTY OF MERCED and CALIFORNIA FORENSIC

11  MEDICAL GROUP dba WELLPATH. *Patino v. County of Merced*, United States District Court, Eastern

12  District of California, Case No. 1:18-cv-01468-AWI-SAB. The case was settled pre-trial for $150,000.

13        (e)     "HIG Capital's California Forensic Medical Group (CFMG), now part of

14  Wellpath, and its clients have agreed to pay out millions of dollars in settlements to families of

15  incarcerated people who have alleged negligence in the care the company provided." Jim Baker, *HIG*

16  *Capital's and Wellpath's Correctional Healthcare Investment Risks* (July 2019), available at:

17  <https://pestakeholder.org/wp-content/uploads/2019/07/HIG-Capitals-Correctional-Healthcare-

18  Investment-Risks-PESP-070819.pdf>.

19        (f)     "Analysis of California department of justice data by Fairwarning found that about

20  200 inmates died under the care of California Forensic Medical Group (CFMG), the Californian arm of

21  the [Correctional Medical Group Companies], between 2004 and 2014. Excluding homicide, it works out

22  at a death rate of 1.7 per 1,000 inmates at CFMG jails compared with 1.5 in other jails." Todd Murphy, a

23  director of business development for Correctional Medical Group Companies, stated that "the main

24  reason counties are choosing to outsource their jail healthcare is not to reduce daily costs, but for the

25  comfort of knowing that a lawsuit brought by the family of a dead inmate would be brought against the

26  company and not the county. 'We provide a full partnership to our county partners,' he said. 'But the

27  biggest thing we do is indemnify the county against risk and reliability, do everything we can to keep

28  them out of trouble.'" Rupert Neate, *Welcome to Jail Inc: how private companies make money off US*

1   *prisons* (June 16, 2026), available at: <https://www.theguardian.com/us-news/2016/jun/16/us-prisons-

2   jail-private-healthcare-companies-profit>.

3          (g)    In 2015, Defendant CALIFORNIA FORENSIC MEDICAL GROUP entered into a

4   class action settlement which required it to address issues of inadequate medical and mental healthcare,

5   inadequate staffing, and accommodations for disabled prisoners and serious safety problems at the

6   Monterey County Jail. *Hernandez v. County of Monterey*, U.S. District Court, Northern District of

7   California, Case No. 5:13-cv-02354-BLF, ECF No. 485 (N.D. Cal. May 15, 2015). Defendant

8   CALIFORNIA FORENSIC MEDICAL GROUP failed completely to comply with the terms of the

9   settlement, and the court issued an order compelling its compliance. *Id*. ECF No. 617 (N.D. Cal. Nov. 1,

10   2017).

11          (h)    In 2013–2014, the Santa Cruz County Grand Jury addressed multiple deaths in the

12   county jail where Defendant CALIFORNIA FORENSIC MEDICAL GROUP provided services. The

13   investigation reviewed five in-custody deaths between August 2012 and July 2013, including two

14   suicides by hanging and four deaths which occurred after Defendant CALIFORNIA FORENSIC

15   MEDICAL GROUP assumed responsibility for the medical services at the jail. Each of the individuals

16   who died in-custody had medical problems, mental health problems, or both. In each in-custody death

17   case, the report identified failures at critical points in the process, sometimes finding that individuals

18   were incorrectly classified, not properly monitored, or inadequately treated. <https://www.co.santa-

19   cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-

20   2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf>.

21       81.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

22   VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH were or

23   should have been on notice regarding the need to discontinue, modify, or implement new and different

24   versions of deficient policies or customs because the inadequacies constituted life-threatening decision

25   and were so obvious and likely to result in violations of the rights of inmates, including DEREK

26   VALENTINE.

27       82.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

28   VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's

1  inadequate policies, customs, training, and supervision proximately caused violations of the rights of

2  inmates, including DEREK VALENTINE.

3                                    **FIRST CLAIM**

4                          **Deliberate Indifference / Special Relationship**

5                          **(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

6         83.    Plaintiff ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30)

7  asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S

8  OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and

9  DOE 1 to 20.

10        84.    The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the

11 extent relevant and as if fully set forth in this Claim.

12        85.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE

13 1 to 20 intentionally refused to provide DEREK VALENTINE with necessary medical care or treatment,

14 or refused to transfer DEREK VALENTINE to a facility that could provide such necessary medical care

15 or treatment, putting DEREK VALENTINE at substantial risk of suffering serious harm, and did not take

16 reasonable available measures to abate that risk, where a reasonable official in the circumstances would

17 have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the U.S.

18 Constitution.

19        86.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

20 VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH

21 maintained policies or customs of action and inaction and knew or should have known that officials

22 under their command were inadequately trained, supervised, or disciplined resulting from either the lack

23 of proper training, pursuant to policy, or the result of the lack of policy, in violation of the Fourteenth

24 Amendment to the U.S. Constitution.

25        87.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba

26 WELLPATH, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved

27 reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

28        88.    DEREK VALENTINE was injured as a direct and proximate result of Defendants

                                            22

COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE,

CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and

inactions, entitling Plaintiff ESTATE OF DEREK VALENTINE to receive compensatory and nominal

damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to

20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC

MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DEREK VALENTINE prays for relief as hereunder

appears.

## SECOND CLAIM

### Title II of the Americans with Disabilities Act

### (42 U.S.C. § 12101, *et seq.*)

89.     Plaintiff ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30)

asserts this Claim against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S

OFFICE.

90.     The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the

extent relevant and as if fully set forth in this Claim.

91.     Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE

each qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104.

DEREK VALENTINE had a physical or mental impairment that substantially limited one or more major

life activities and had a record of such an impairment.

92.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to

20 failed reasonably to accommodate DEREK VALENTINE's disability, where they could have

provided a reasonable accommodation, including by: (a) providing DEREK VALENTINE with

necessary medical care or treatment; (b) transferring DEREK VALENTINE to a facility that could

provide necessary medical care or treatment; and/or (c) classifying and housing DEREK VALENTINE

based on his impairment, where he would receive adequate and necessary medical care or treatment, with

23

1   deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42

2   U.S.C. § 12101, *et seq.*

3       93.     DEREK VALENTINE was injured as a direct and proximate result of Defendants

4   COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE,

5   CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and

6   inactions, entitling Plaintiff ESTATE OF DEREK VALENTINE to receive compensatory and nominal

7   damages against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

8       WHEREFORE, Plaintiff ESTATE OF DEREK VALENTINE prays for relief as hereunder

9   appears.

10   **THIRD CLAIM**

11   **Section 504 of the Rehabilitation Act**

12   **(29 U.S.C. § 701, *et seq.*)**

13      94.     Plaintiff ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30)

14   asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S

15   OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

16      95.     The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the

17   extent relevant and as if fully set forth in this Claim.

18      96.     Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE

19   qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104.

20   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA

21   FORENSIC MEDICAL GROUP dba WELLPATH receive federal financial assistance. DEREK

22   VALENTINE had a physical or mental impairment that substantially limited one or more major life

23   activities and had a record of such an impairment.

24      97.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

25   VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to

26   20 failed reasonably to accommodate DEREK VALENTINE's disability, where they could have

27   provided a reasonable accommodation, including by: (a) providing DEREK VALENTINE with

28   necessary medical care or treatment; (b) transferring DEREK VALENTINE to a facility that could

24

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Valentine v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

provide necessary medical care or treatment; and/or (c) classifying and housing DEREK VALENTINE based on his impairment, where he would receive adequate and necessary medical care or treatment, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

98.      DEREK VALENTINE was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DEREK VALENTINE to receive compensatory and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

WHEREFORE, Plaintiff ESTATE OF DEREK VALENTINE prays for relief as hereunder appears.

## FOURTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

99.      Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

100.      The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

101.      Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE shared a close relationship and special bond with DEREK VALENTINE, their biological family member, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship.

102.      Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 caused termination of and interference with Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V.,

25

1 RUTH RAMIREZ, and ALBERT VALENTINE's familial relationship with DEREK VALENTINE,

2 including by exhibiting deliberate indifference to DEREK VALENTINE's need for medical care or

3 treatment, in violation of the Fourteenth Amendment to the U.S. Constitution.

4       103.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba

5 WELLPATH, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved

6 reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

7       104.    Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT

8 VALENTINE were injured as a direct and proximate result of Defendants COUNTY OF MERCED,

9 MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC

10 MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling them to

11 receive compensatory and nominal damages against Defendants COUNTY OF MERCED, MERCED

12 COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL

13 GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against Defendants VERNON

14 WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

15       WHEREFORE, Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and

16 ALBERT VALENTINE pray for relief as hereunder appears.

17 ## FIFTH CLAIM

18 ### Unwarranted Interference with Familial Association

19 ### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

20       105.    Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT

21 VALENTINE asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY

22 SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba

23 WELLPATH, and DOE 1 to 20.

24       106.    The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the

25 extent relevant and as if fully set forth in this Claim.

26       107.    Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT

27 VALENTINE shared a close relationship and special bond with DEREK VALENTINE, their biological

28 family member, which included deep attachments, commitments, and distinctively personal aspects of

26

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Valentine v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

their lives and was typical of a close familial relationship.

108.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 caused termination of and interference with Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE's familial relationship with DEREK VALENTINE, including by exhibiting deliberate indifference to DEREK VALENTINE's need for medical care or treatment, in violation of the First Amendment to the U.S. Constitution.

109.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

110.    Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE pray for relief as hereunder appears.

## SIXTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

111.    Plaintiff ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

112.    The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the

27

extent relevant and as if fully set forth in this Claim.

113.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE 1 to 20 knew or had reason to know that DEREK VALENTINE was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

114.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction resulting in harm to DEREK VALENTINE, in violation of California Government Code § 845.6.

115.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or DOE 1 to 20.

116.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

117.    DEREK VALENTINE was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DEREK VALENTINE to receive compensatory damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DEREK VALENTINE prays for relief as hereunder appears.

## SEVENTH CLAIM

### Failure to Produce Patient Records

### (Cal. Evid. Code § 1158)

118.    Plaintiffs ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30) and ARACELI SANCHEZ assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

119.    The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

120.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to produce DEREK VALENTINE's records, including in a timely and complete manner, in violation of California Evidence Code § 1158.

121.    Plaintiffs ESTATE OF DEREK VALENTINE and ARACELI SANCHEZ were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's actions and inactions, entitling them to receive reasonable expenses against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

WHEREFORE, Plaintiffs ESTATE OF DEREK VALENTINE and ARACELI SANCHEZ pray for relief as hereunder appears.

## EIGHTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

122.    Plaintiffs ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30), ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and

29

DOE 1 to 20.

123.    The allegations of the preceding paragraphs 1 to 121 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

<u>Deliberate Indifference / Special Relationship</u>

124.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE 1 to 20 intentionally refused to provide DEREK VALENTINE with necessary medical care or treatment, or refused to transfer DEREK VALENTINE to a facility that could provide such necessary medical care or treatment, putting DEREK VALENTINE at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the Fourteenth Amendment to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

125.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction and knew or should have known that officials under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the Fourteenth Amendment to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

<u>Section 504 of the Rehabilitation Act & Title II of the Americans with Disabilities Act</u>

126.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 failed reasonably to accommodate DEREK VALENTINE's disability, where they could have provided a reasonable accommodation, including by: (a) providing DEREK VALENTINE with necessary medical care or treatment; (b) transferring DEREK VALENTINE to a facility that could provide necessary medical care or treatment; and/or (c) classifying and housing DEREK VALENTINE based on his impairment, where he would receive adequate and necessary medical care or treatment, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of Title II of the Americans

30

1  with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and Section 504 of the Rehabilitation Act, 29 U.S.C. §

2  794, *et seq.*

3  <u>Failure to Summon Medical Care or Treatment</u>

4  127.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE

5  1 to 20 knew or had reason to know that DEREK VALENTINE was in need of immediate medical care

6  and failed to take reasonable action to summon such medical care, with specific intent (*i.e.*, deliberate

7  indifference or reckless disregard), in violation of California Government Code § 845.6.

8  128.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

9  VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH

10  maintained policies or customs of action and inaction resulting in harm to DEREK VALENTINE, with

11  specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Government

12  Code § 845.6.

13  <u>Failure to Staff and Monitor</u>

14  129.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE

15  1 to 20 failed to conduct visual safety checks and remain accessible to DEREK VALENTINE, with

16  specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Code of

17  Regulations tit. 15 § 1027 *et seq.*

18  130.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

19  VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH

20  maintained policies or customs of action and inaction resulting in harm to DEREK VALENTINE, with

21  specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Code of

22  Regulations tit. 15 § 1027 *et seq.*

23  <u>Failure to Produce Patient Records</u>

24  131.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

25  CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to produce DEREK

26  VALENTINE's records, including in a timely and complete manner, with specific intent (*i.e.*, deliberate

27  indifference or reckless disregard), in violation of California Evidence Code § 1158.

28  \ \ \

Unwarranted Interference with Familial Association

132.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 caused termination of and interference with Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE's familial relationship with DEREK VALENTINE, including by exhibiting deliberate indifference to DEREK VALENTINE's need for medical care or treatment, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the First and Fourteenth Amendments to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

(Allegations Common to All Theories)

133.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or DOE 1 to 20.

134.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

135.    DEREK VALENTINE and Plaintiffs ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF DEREK VALENTINE, ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE to receive compensatory and treble damages and civil penalties against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC

1    MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

2        WHEREFORE, Plaintiffs ESTATE OF DEREK VALENTINE, ARACELI SANCHEZ, L.V.,

3    C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE pray for relief as hereunder appears.

4                                    **NINTH CLAIM**

5                    **Intentional Infliction of Emotional Distress**

6        136.    Plaintiff ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30)

7    asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S

8    OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and

9    DOE 1 to 20.

10       137.    The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the

11   extent relevant and as if fully set forth in this Claim.

12       138.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE

13   1 to 20 engaged in outrageous conduct, with intent or reckless disregard of the probability that DEREK

14   VALENTINE would suffer emotional distress and he did suffer severe emotional distress, including by:

15   (a) exhibiting deliberate indifference to DEREK VALENTINE's need for medical care or treatment; (b)

16   failing reasonably to accommodate DEREK VALENTINE's impairment; (c) failing timely to summon

17   medical care, in violation of California Government Code § 845.6; and/or (d) failing to comply with

18   California Code of Regulations tit. 15 § 1027 *et seq*.

19       139.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

20   VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH engaged

21   in outrageous conduct, with intent or reckless disregard of the probability that DEREK VALENTINE

22   would suffer emotional distress and he did suffer severe emotional distress, including by maintaining

23   policies or customs of action and inaction which resulted in harm to DEREK VALENTINE, in violation

24   of California Government Code § 845.6 and California Code of Regulations tit. 15 § 1027 *et seq*.

25       140.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

26   CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including

27   through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a),

28   845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within

                                          33

the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or DOE 1 to 20.

141.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

142.    DEREK VALENTINE was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DEREK VALENTINE to receive compensatory damages against of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against of Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DEREK VALENTINE prays for relief as hereunder appears.

## TENTH CLAIM

### Negligence

143.    Plaintiff ESTATE OF DEREK VALENTINE (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

144.    The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

145.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 owed DEREK VALENTINE a duty of care and breached that duty, including by: (a) exhibiting deliberate indifference to DEREK VALENTINE's need for medical care or treatment; (b) failing reasonably to accommodate DEREK VALENTINE's impairment; (c) failing timely to summon medical care, in violation of California Government Code § 845.6; and/or (d) failing to

34

comply with California Code of Regulations tit. 15 § 1027 *et seq*.

146. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH owed DEREK VALENTINE a duty of care and breached that duty, including by maintaining policies or customs of action and inaction which resulted in harm to DEREK VALENTINE, in violation of California Government Code § 845.6 and California Code of Regulations tit. 15 § 1027 *et seq*.

147. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or DOE 1 to 20.

148. Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

149. DEREK VALENTINE was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF DEREK VALENTINE to receive compensatory damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF DEREK VALENTINE prays for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

**ELEVENTH CLAIM**

**Wrongful Death**

**(Cal. Code Civ. Proc. § 377.60)**

150.     Plaintiffs ARACELI SANCHEZ, L.V., C.V., and M.V. assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

151.     The allegations of the preceding paragraphs 1 to 82 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

152.     Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and DOE 1 to 20 caused DEREK VALENTINE's death by wrongful act or neglect, including by: (a) exhibiting deliberate indifference to DEREK VALENTINE's need for medical care or treatment; (b) failing reasonably to accommodate DEREK VALENTINE's impairment; (c) failing timely to summon medical care, in violation of California Government Code § 845.6; and/or (d) failing to comply with California Code of Regulations tit. 15 § 1027 *et seq.*

153.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH caused DEREK VALENTINE's death by wrongful act or neglect, including by maintaining policies or customs of action and inaction which resulted in harm to DEREK VALENTINE.

154.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or DOE 1 to 20.

155.     Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

156.     Plaintiffs ARACELI SANCHEZ, L.V., C.V., and M.V. were injured as a direct and

36

proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiffs ARACELI SANCHEZ, L.V., C.V., and M.V. pray for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF DEREK VALENTINE, ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE seek Judgment as follows:

1. For an award of compensatory, general, special, and nominal damages (including survival damages and wrongful death damages under federal and state law) against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20, in excess of $30,000,000, according to proof at trial;

2. For an award of exemplary/punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3. For funeral and/or burial expenses;

4. For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as

37

1  may be applicable (except that no punitive damages are sought against Defendants COUNTY OF

2  MERCED and MERCED COUNTY SHERIFF'S OFFICE, pursuant to California Civil Code § 818);

3      5.      For interest;

4      6.      For an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794,

5  42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, California

6  Evidence Code § 1158, and any other statute as may be applicable; and

7      7.      For an award of any other further relief, as the Court deems fair, just, and equitable.

8  Dated: December 8, 2023                    Respectfully Submitted,

9

10                                       By: _____

11

12                                            Mark E. Merin
                                             Paul H. Masuhara
13                                            LAW OFFICE OF MARK E. MERIN
                                             1010 F Street, Suite 300
14                                            Sacramento, California 95814
                                             Telephone: (916) 443-6911
15                                            Facsimile: (916) 447-8336

16                                            Attorneys for Plaintiffs
                                             ESTATE OF DEREK VALENTINE,
17                                            ARACELI SANCHEZ, L.V., C.V., M.V.,
                                             RUTH RAMIREZ, and ALBERT VALENTINE

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF DEREK VALENTINE, ARACELI SANCHEZ, L.V., C.V., M.V., RUTH RAMIREZ, and ALBERT VALENTINE.

Dated: December 8, 2023                    Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiffs
    ESTATE OF DEREK VALENTINE,
    ARACELI SANCHEZ, L.V., C.V., M.V.,
    RUTH RAMIREZ, and ALBERT VALENTINE